UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────

STEVEN D. BURDICK,

                                Plaintiff,

                v.                                    5:14-CV-1254
                                                            (BKS/TWD)

NEW YORK STATE POLICE,
NYS TROOPER ALEX KURILOVITCH,
NYS TROOPER MICHAEL SCHMIT,
NYS TROOPER SGT. EDWIN
CROUCHER, OSWEGO COUNTY,

                                Defendants.
───────────────────────────────────

APPEARANCES

STEVEN D. BURDICK
Plaintiff pro se
4102 State Route 3
Fulton, NY 13069

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

Presently before the Court is a pro se complaint and application to proceed *in forma pauperis* filed by Plaintiff Steven D. Burdick. (Dkt. Nos. 1 and 5.)

## I.    APPLICATION TO PROCEED *IN FORMA PAUPERIS*

Plaintiff has applied to proceed *in forma pauperis*. (Dkt. No. 5.) A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1) (2006). After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 5), I find that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[1]

---

[1] Plaintiff should note that although the application to proceed *in forma pauperis* has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

## II. SCREENING OF THE COMPLAINT

### A. Applicable Legal Standard

28 U.S.C. § 1915(e) directs that when a litigant proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Iqbal*, 556 U.S. at 678.

When screening a complaint, the court has the duty to show liberality towards pro se litigants. *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

### B.     Allegations of the Complaint

Plaintiff alleges that Defendant State Troopers Alex Kurilovitch and Michael Schmit came to Plaintiff's residence on October 14, 2011, because they had received a complaint that Plaintiff was neglecting an animal. (Dkt. No. 1 ¶ 21.) The complainant had reported that Plaintiff's dog was seriously injured after being hit by a car and had been in the same spot in Plaintiff's yard for twenty-two hours. *Id.* ¶ 22.

Plaintiff and his four-year-old son went into the yard to speak to Defendants and accompanied them to check on the dog. (Dkt. No. 1 ¶ 24.) Plaintiff explained that his dog had been eating and drinking normally since being hit by the car, was able to stand and walk, did not appear to have any serious injuries, and had walked on its own into the yard that morning after being carried into the enclosed porch the night before. *Id.* ¶¶ 25-26.

Defendants informed Plaintiff that they were going to seize the dog. (Dkt. No. 1 ¶ 28.) Plaintiff became concerned and called his attorney for advice. *Id.* The attorney asked to speak to a trooper. *Id.* When Plaintiff held out the phone to Defendant Kurilovitch, he slapped it out of Plaintiff's hand and yelled that he did not want to speak to Plaintiff's attorney. *Id.* ¶ 29.

After Defendant Kurilovitch slapped Plaintiff's phone, Plaintiff picked up his son and walked

back toward his house. (Dkt. No. 1 ¶ 31.) Plaintiff did not believe that he was being detained or that he was under arrest. *Id.* He walked up the entry stairs, stepped onto the top step, and "set his son down just inside the enclosed front porch entry." *Id.* ¶ 32. Immediately thereafter, Defendants Kurilovitch and Schmit tackled Plaintiff and threw him over the stair railing. *Id.* The officers shouted, "You're under arrest" when Plaintiff was in mid-air. *Id.* ¶ 33. As he landed, Plaintiff's neck and upper back slammed into the side of a van parked in the driveway. *Id.* ¶ 34.

Defendants arrested Plaintiff and charged him with cruelty to an animal, endangering the welfare of a child, and resisting arrest. (Dkt. No. 1 ¶ 35.) After Plaintiff was arrested and booked, he was transported to St. Joseph's Hospital for x-rays and treatment. *Id.* ¶ 34.

Plaintiff alleges that Defendants Kurilovitch and Schmit "did act on the order/directive of their superior, NYS Police S[e]rg[e]ant, Edwin Croucher[,] in their arrest of the Plaintiff." (Dkt. No. 1 ¶ 38.) Plaintiff alleges that Defendant Croucher mocked him as he was being processed at the NYS Police Barracks in Fulton. *Id.*

Plaintiff alleges that news of his arrest was "published in the news media via information conveyed . . . by the Defendant(s)." (Dkt. No. 1 ¶ 42.) He alleges that Defendants' statements were false and caused Plaintiff to lose his established place of business, suffer a substantial loss of business, lose key employees, incur substantial legal fees, and suffer physical pain and severe mental anguish. *Id.* ¶ 44.

Plaintiff alleges that:

> Defendant [] Oswego County [] had knowledge shortly after the fact [] that there was no probable cause and no warrant for the NYS Troopers to arrest the Plaintiff and should have dismissed with prejudice all charges against the Plaintiff arising out of the October 14, 2011 arrest. Instead, Oswego County prosecutors . . . did maliciously pursue prosecution of the Plaintiff. . . .

-4-

(Dkt. No. 1 ¶ 46.)

Plaintiff alleges that he was tried by a jury, which acquitted him of the endangering the welfare of a child charge and found him guilty of the charges of resisting arrest and cruelty to an animal. (Dkt. No. 1 ¶¶ 14-16.) Plaintiff appealed his conviction. *Id.* ¶ 18. The appeal was still pending when Plaintiff filed the complaint in this action. *Id.*

Plaintiff filed this action on October 14, 2014. (Dkt. No. 1.) Plaintiff asserts causes of action for violation of his right to equal protection, excessive force, assault and battery, deprivation of his right to counsel, false arrest and false imprisonment, defamation, malicious prosecution, intentional infliction of emotional distress, and abuse of process. *Id.* ¶¶ 48-111. Plaintiff requests five million dollars in compensatory damages, five million dollars in punitive damages, an injunction restraining Defendants "from engaging in further discriminatory and/or retaliatory treatment," and a review of "all policies and procedures for probable cause, warrantless offense arrests, most notably when young minor children are present." *Id.* at 26-27. Plaintiff also requests interest, attorney's fees, and declaratory relief. *Id.* at 27.

**C.   Analysis**

1.   Claims Against New York State Police

Plaintiff names the New York State Police as a Defendant. (Dkt. No. 1 ¶ 7.) Plaintiff's claims against that entity are barred by the Eleventh Amendment, which grants sovereign immunity to states and instrumentalities of the state, and also by the language of 42 U.S.C. § 1983, which imposes liability only on "persons." *Simons v. New York*, 472 F. Supp. 2d 253, 260-61 (N.D.N.Y. 2007) (dismissing claims for both monetary and injunctive relief against the State Police as barred by the Eleventh Amendment and the language of § 1983). Therefore, I recommend that the Court dismiss Plaintiff's claims against the New York State Police.

Where a pro se complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* Here, better pleading would not cure the defect with Plaintiff's claims against the New York State Police. Therefore, I recommend that the Court dismiss these claims without leave to amend.

        2.        <u>Claims Against Oswego County</u>

Plaintiff names Oswego County as a Defendant. (Dkt. No. 1 ¶ 9.) "To establish liability under 42 U.S.C. § 1983 against a municipality . . . , a plaintiff must show that the claimed constitutional violation resulted from a municipal custom or policy." *Ahern v. City of Syracuse*, 411 F. Supp. 2d 132, 139 (N.D.N.Y. 2006). An "official policy or custom" can be shown in several ways: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come in contact with the municipal employees. *Dorsett-Felicelli, Inc. v. Cnty. of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S 658, 690-91 (1978), *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986), and *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "Custom denotes persistent and widespread practices, and thus proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*. . . ." *Ahern*, 411

F. Supp. 2d at 139 (punctuation and citation omitted). Here, Plaintiff does not allege facts plausibly suggesting a custom or policy. Therefore, I recommend that the Court dismiss Plaintiff's claims against Oswego County with leave to amend.

### 3. Equal Protection

Plaintiff alleges that Defendants violated his right to equal protection. (Dkt. No. 1 ¶ 49.)

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). Governmental action may also violate the Equal Protection Clause where the defendants intentionally treat the plaintiff "differently from others with no rational basis for the difference in treatment." *Id*. Thus, a plaintiff asserting an equal protection claim must allege facts plausibly suggesting that (1) he was treated differently from similarly situated individuals; and (2) the defendants treated him differently due to his membership in a suspect class, inhibited his exercise of a fundamental right, acted out of malice, or acted irrationally and arbitrarily.

Here, Plaintiff has not alleged any facts plausibly suggesting that he was treated differently from similarly situated individuals. Therefore, it is recommended that the Court dismiss Plaintiff's equal protection claim with leave to amend.

### 4. Excessive Force

Plaintiff alleges that Defendants Kurilovitch and Schmit subjected him to excessive force. (Dkt. No. 1 ¶¶ 61-66.)

"The Fourth Amendment protects individuals from the government's use of excessive force when detaining or arresting individuals." *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (citing *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999)). "When determining whether police officers have employed excessive force in the arrest context, the Supreme Court has instructed that courts should examine whether the use of force is objectively reasonable 'in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)) (punctuation omitted). Among the most relevant facts and circumstances are (1) the severity of the crime allegedly committed; (2) the threat of danger to the officer and society; and (3) whether the suspect was resisting or attempting to evade arrest. *Thomas*, 165 F.3d at 143. Reasonableness is generally a question of fact. *See McKelvie v. Cooper*, 190 F.3d 58 (2d Cir. 1999) (reversing magistrate judge's grant of summary judgment to officers on Fourth Amendment excessive force claim).

Accepting Plaintiff's allegations as true and taking them in the light most favorable to Plaintiff, the complaint states an excessive force claim against Defendants Kurilovitch and Schmit.[2] Therefore, it is recommended that this claim survive initial review and that the Court direct service of the claim on Defendants Kurilovitch and Schmit.

---

[2] The Court expresses no opinion about whether the claim is sufficiently well-pleaded to survive a fully briefed motion to dismiss or for summary judgment.

-8-

5. Assault and Battery

Plaintiff claims that Defendants assaulted and battered him. (Dkt. No. 1 ¶¶ 67-74.) To the extent that Plaintiff asserts this claim under 42 U.S.C. § 1983, it is duplicative of his excessive force claim and must be dismissed. *Raymond v. Bunch*, 136 F. Supp. 2d 71, 81 (N.D.N.Y. 2001). To the extent that this claim is asserted under New York law, it is barred by New York's one-year statute of limitations. N.Y. C.P.L.R. § 215(3) (McKinney Supp. 2015); *Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659, 667-68 (S.D.N.Y. 2007). Therefore, I recommend that the Court dismiss this claim without leave to amend.

6. Right to Counsel

Broadly construed, the complaint alleges that Defendant Kurilovitch violated Plaintiff's right to counsel by knocking the phone out of Plaintiff's hand rather than speaking to Plaintiff's attorney. (Dkt. No. 1 ¶¶ 67-69.) The "Sixth Amendment right to counsel does not attach until the time that adversary judicial proceedings have been initiated" by, for instance, formal charge, preliminary hearing, indictment, information, or arraignment. *Nimkoff v. Dollhausen*, 751 F. Supp. 2d 455, 465 (E.D.N.Y. 2010); *Williams v. Artus*, 691 F. Supp. 2d 515, 523 (S.D.N.Y. 2010). Here, adversary judicial proceedings had not been initiated at the time that Defendant Kurilovitch allegedly slapped the phone out of Plaintiff's hand. Therefore, I recommend that the Court dismiss this claim without leave to amend.

7. False Arrest and False Imprisonment

Plaintiff alleges that Defendants Kurilovitch and Schmit falsely arrested and imprisoned him. (Dkt. No. 1 ¶¶ 75-80.)

The elements of a Fourth Amendment false arrest claim under 42 U.S.C. § 1983 are the

same as those for a false arrest claim under New York law. *Kraft v. City of New York*, 696 F. Supp. 2d 403, 418 (S.D.N.Y. 2010). "To state a claim for false arrest under New York law, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (punctuation and citation omitted). Where an officer has probable cause to arrest a plaintiff, the confinement is privileged. *Id*. at 76. The burden of showing that there was probable cause for the arrest is on the officer. *Id*.

In *Heck v. Humphrey*, the Supreme Court held that:

> in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. 477, 486-87 (1994). Under *Heck* and its progeny, a "§ 1983 action is barred (absent prior invalidation)--no matter the relief sought (damages or equitable relief) . . .--*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis in original). If a plaintiff whose success would necessarily demonstrate the invalidity of the confinement or its duration does not satisfy *Heck*'s 'favorable termination' rule, he must seek relief through the federal habeas corpus statute rather than through § 1983. *Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006) ("[T]he purpose of the *Heck* favorable termination requirement is to prevent prisoners from using § 1983 to vitiate collaterally a judicial or

administrative decision that affected the overall length of confinement, and that punishments related to their term of imprisonment, or the procedures that led to them . . . must be attacked through a habeas petition.")

Here, were Plaintiff to succeed on his claims of false arrest and false imprisonment, it would necessarily call into question the validity of his conviction after a jury trial for animal cruelty and resisting arrest. As such, these claims are barred because Plaintiff has failed to show that his conviction has been overturned. *See Duamutef v. Morris*, 956 F. Supp. 1112, 1115-18 (S.D.N.Y. 1997) (dismissing § 1983 claims of malicious prosecution, false arrest, perjury, retaliation, and civil rights conspiracy under *Heck* where the plaintiff's underlying conviction had not been overturned). Therefore, I recommend that the Court dismiss these claims without prejudice to renew in the event that Plaintiff's pending appeal results in his conviction being overturned.

### 8. Defamation

Plaintiff claims that the New York State Police defamed his character by giving statements to the Syracuse Post Standard and television news crews regarding his arrest. (Dkt. No. 1 ¶¶ 81-90.) Plaintiff purports to raise this claim under § 1983. *Id.* at 20. As discussed above, any claims against the New York State Police are barred by the Eleventh Amendment and the language of § 1983. Further, "[d]efamation . . . is an issue of state law, not of federal constitutional law, and therefore provides an insufficient basis to maintain a § 1983 action." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (citation omitted). Finally, to the extent that Plaintiff intends to bring his defamation claim under state law, it is barred by New York's one-year statute of limitations. N.Y. C.P.L.R. § 215(3); *Solomon v. Siemens Indus., Inc.*, 8 F. Supp. 3d 261, 274 (E.D.N.Y. 2014) ("The statute of limitations for defamation claims in New York is one year and begins to run upon publication."). Therefore, I

recommend that the Court dismiss this claim without leave to amend.

### 9. Malicious Prosecution

Plaintiff claims that Defendants maliciously prosecuted him. (Dkt. No. 1 ¶¶ 91-97.) In order to maintain a § 1983 claim for malicious prosecution, a plaintiff must plead facts plausibly suggesting that (1) the defendant initiated a prosecution against the plaintiff; (2) the defendant lacked probable cause to believe the proceeding could succeed; (3) the defendant acted with malice; (4) the prosecution was terminated in the plaintiff's favor; and (5) there was a "sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) (citations omitted).

Here, Plaintiff admits that the prosecution was not entirely terminated in his favor because he states on the face of the complaint that he was convicted of animal cruelty and resisting arrest. (Dkt. No. 1 ¶ 16.) Thus, Plaintiff cannot proceed with his malicious prosecution claims regarding those charges. Therefore, it is recommended that the Court dismiss the malicious prosecution claim regarding those charges without prejudice to renew if Plaintiff's conviction is overturned on appeal.

In addition to his claims about the charges of which he was convicted, Plaintiff alleges that he was acquitted of the charge of endangering the welfare of a child. (Dkt. No. 1 ¶ 15.) Where a criminal prosecution has resulted in acquittal on some, but not all charges, the court must determine whether the charges are "sufficiently distinct to allow a malicious prosecution claim to proceed on the charge for which there was an acquittal." *Bowles v. New York*, 37 F. Supp. 2d 608, 611 (S.D.N.Y. 1999) (citations omitted). Here, at least for the purposes of initial review, the charges against Plaintiff were sufficiently distinct to allow his malicious prosecution claim to proceed regarding the endangering the welfare of a child charge of which he was acquitted. Therefore, I recommend that the Court direct service of that

claim on Defendants Kurilovitch and Schmit.[3]

> 10. <u>Intentional Infliction of Emotional Distress</u>

Plaintiff alleges that Defendants "engaged in extreme and outrageous conduct." (Dkt. No. 1 ¶¶ 99, 101.) Broadly construed, this appears to be a claim for intentional infliction of emotional distress. This claim is barred by New York's one-year statute of limitations. N.Y. C.P.L.R. § 215(3); *Solomon*, 8 F. Supp. 3d at 285. Therefore, I recommend that the Court dismiss this claim without leave to amend.

> 11. <u>Abuse of Process</u>

Plaintiff alleges that Defendants subjected him to abuse of process. (Dkt. No. 1 ¶¶ 104-111.) "[C]laims for . . . abuse of process do not accrue until the underlying action which is the basis for the claim is terminated in the plaintiff's favor by dismissal." *TADCO Constr. Corp. v. Dormitory Auth. of N.Y.*, 700 F. Supp. 2d 253, 273 (E.D.N.Y. 2010). Here, as discussed above, the underlying action against Plaintiff was not terminated in his favor. Therefore, I recommend that the Court dismiss this claim without prejudice to renew if Plaintiff's conviction is overturned on appeal.

> 12. <u>Claims Against Defendant Croucher</u>

Plaintiff alleges that Defendants Kurilovitch and Schmit "did act on the order/directive of their superior, NYS Police S[e]rg[e]ant, Edwin Croucher[,] in their arrest of the Plaintiff." (Dkt. No. 1 ¶ 38.) Plaintiff further alleges that Defendant Croucher mocked him as he was being processed at the NYS Police Barracks in Fulton. *Id.*

Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional

---

[3] This recommendation does not conflict with the recommendation regarding the false arrest claim because malicious prosecution claims are analyzed differently than false arrest claims where there has been a partial acquittal. *See Rodriguez v. N.Y.C. Police Dep't*, No. 10 Civ. 891 (BSJ) (THK), 2011 U.S. Dist. LEXIS 122871, at *13-14, 2011 WL 5057205, at *5 (S.D.N.Y. Oct. 24, 2011).

deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection" between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). If the defendant is a supervisory official, a mere linkage to the unlawful conduct through the chain of command (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam). In other words, supervisory officials may not be held liable merely because they held positions of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (citations omitted). Rather, supervisory personnel may be considered personally involved if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).[4]

---

[4] In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory official's liability must be judged by the official's purpose rather than the official's knowledge of subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing *Iqbal*'s effect on the *Colon* categories. Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases). The Second Circuit itself has noted that "*Iqbal* has . . . engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon*." *Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012). The Second Circuit declined to address the issue in *Reynolds*, however, and has not addressed it since that time. I will

(continued...)

Although this is a close case, for the purposes of initial review I recommend that the Court find that Plaintiff has sufficiently alleged Defendant Croucher's personal involvement to merit service of the surviving causes of action on him. I express no opinion about whether the claims against Defendant Croucher are sufficient to withstand a fully briefed motion to dismiss.

To the extent that Plaintiff seeks to hold Defendant Croucher liable for mocking him, however, the Court should dismiss that claim without leave to amend. Verbal harassment, in and of itself, does not rise to the level of a constitutional violation. *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 364 (N.D.N.Y. 2010); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996) ("Allegations of threats or verbal harassment, without any injury or damage, do not state a claim under 42 U.S.C. § 1983.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 5 ) is **GRANTED**; and it is further

**RECOMMENDED** that the Court dismiss the following claims without leave to amend: (1) all claims against the New York State police; (2) the claim for assault and battery; (3) the right to counsel claim; (4) the defamation claim; (5) the claim for intentional infliction of emotional distress; and (6) the claim against Defendant Croucher regarding verbal harassment; and it is further

**RECOMMENDED** that the Court dismiss the following claims with leave to amend: (1) all claims against Oswego County; and (2) the equal protection claim; and it is further

**RECOMMENDED** that the Court dismiss the following claims without prejudice to renew if Plaintiff's conviction is overturned on appeal: (1) the false arrest claim; (2) the malicious prosecution

---

[4](...continued)
assume for the purposes of this Report-Recommendation that *Colon* remains good law.

claim regarding the charges of animal cruelty and resisting arrest; and (3) the abuse of process claim; and it is further

**RECOMMENDED** that the Court direct service on Defendants Kurilovitch, Schmit, and Croucher of the following claims: (1) the excessive force claim; and (2) the malicious prosecution claim regarding the charge of endangering the welfare of a minor; and it is further

**RECOMMENDED** that a formal response to the surviving claims be filed by Defendants as provided for in the Federal Rules of Civil Procedure subsequent to service of process; and it is further

**ORDERED** that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel. **Any letter or other document received by the Clerk or the Court which does not include a certificate of service which clearly states that an identical copy was served upon all opposing parties or their attorneys is to be returned, without processing, by the Clerk.** Plaintiff shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All motions shall comply with the Local Rules of Practice of the Northern District; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of*

*Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72.

Dated: April 1, 2015
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge